## City of Covington v. Sullivan, et al.

(Decided December 5, 1916.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Appeal and Error—Practice When Amount in Controversy is Under $500.—When no appeal is prayed in the lower court in a case where the amount in controversy is under $500, and an appeal is prosecuted to this court, the appellant should file with the record a written motion asking this court to grant an appeal. But when no appeal is prayed in the lower court and the record is filed in this court unaccompanied by a motion to grant an appeal, the clerk may act as if a motion for an appeal accompanied the record and may issue summons, take a supersedeas bond and issue an order of supersedeas, as the filing of the record will be treated as including a motion that this court grant an appeal.

2. Municipal Corporations—Cities of the Second Class—Street Improvement.—Under section 3096 of the Kentucky Statutes, applicable to cities of the second class, no local assessment for street improvement can exceed one-half the value of the property assessed after the improvement has been made.

3. Municipal Corporations—Street Improvement—Assessment to the Extent of One-half the Value of the Property Abutting on Each Street.—If property abuts on two streets, one-half of its value may be taken for the improvement of each street, and if the street is improved under one ordinance and thereafter a sidewalk is constructed under another ordinance, the city may assess the lot for the cost of the sidewalk to the extent of fifty per cent. of its enhanced value, if any, between the time when the assessment for the street improvement was made and the time when the assessment for the sidewalk improvement was made.

4. Municipal Corporations—Street Improvement—Definition of.—The words "street improvement" in section 3096 of the statutes include the improvement of streets, alleys, public ways and sidewalks, and the guttering and curbing incident thereto.

5. Muncipal Corporations—Street Improvement—Liability of City.— When a city orders the improvement of streets, it will be liable to the contractor for whatever remains due on the contract price after exhausting the lien allowed by law on the property improved.

6. Municipal Corporations—Sewers—Assessment for.—In cities of the second class a sewer improvement is distinct from a sidewalk or street improvement and is regulated by section 3105 of the statutes relating exclusively to sewers; so that in addition to the assessment for street improvement, a lot may be assessed for the sewer improvement.

F. W. SCHMITZ for appellant.

T. J. EDMONDS for Edmonds Bros.

JOHN E. SHEPARD for Globe Cement Co.

SCHMIDT & HOLMES for Jerry Sullivan.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Richard and T. J. Edmonds owned a lot in the city of Covington which fronted on Pike street about 21 feet and was 186 feet deep. Abutting on the side of this lot Greer avenue, a new street, was opened, which extended along the side of the lot for the full distance of 186 feet. After Greer avenue was opened, and in September, 1909, the city council by an ordinance provided for the improvement of the carriageway of this avenue, and in November, 1909, entered into a contract for this improvement with Sullivan by which he was to be paid $410. The work was completed by Sullivan and accepted in September, 1910, and soon thereafter Sullivan brought this suit against the city of Covington, the Edmonds, the owners of the lot, and the Globe Cement Company, which also had an improvement lien against the lot, asking for the enforcement of his lien on the lot and if it should be adjudged that he did not have a lien in whole or in part for the amount of this improvement claim, he have a judgment against the city for any balance due on his claim after exhausting his lien on the lot.

In this suit the Globe Cement Company, by an answer and cross-petition set up that the city of Covington, by an ordinance adopted October 11, 1909, ordered the construction of a sewer along the Edmonds' lot for its full length abutting on Greer avenue, and entered into a contract with it for the construction of this sewer, for which it was to be paid $135. It also averred that in October, 1910, the city by an ordinance directed the construction of a sidewalk on Greer avenue abutting this Edmonds' lot, and entered into a contract with it for the construction of this sidewalk at a cost of $172. Further averring that these improvements had been accepted by the city, it asked that its lien on the lot for these two amounts be enforced, and that, if it could not have an enforcible lien on the lot for the whole of its claim, it have a judgment against the city for whatever balance might be found due after exhausting its lien.

It will be seen that the total of these liens is $717, and the Edmonds, in their answer to the petition of Sullivan and the cross-petition of the Globe Cement Company, pleaded that the value of their lot after all the improvements were made was less than three hundred dollars. They also averred that to subject the lot to a

lien for these improvements would amount to its confiscation, and therefore asked that the suits of Sullivan and the Globe Cement Company, insofar as they sought to subject the lot to the asserted liens for these improvements, be dismissed.

After the case had been prepared for trial, the lower court found as a matter of fact that the value of the lot after the improvements were made was two hundred and fifty dollars. It further found as a matter of law that the assessments for the original improvement of Greer avenue consisting of the items before mentioned amounted to a confiscation of the lot and therefore the assessments were declared void and the liens asserted by Sullivan and the Globe Cement Company denied. It was further adjudged that Sullivan and the Globe Cement Company have a judgment against the city for the amount of their claim. From this judgment the city prosecutes this appeal.

When the case was called on the docket of this court the appellees, Sullivan, the Edmonds brothers, and the Globe Cement Company, moved to dismiss the appeal of the city upon the ground that this court had no jurisdiction of the appeal, which motion was passed to be heard with the merits. The judgment of the lower court was rendered on November 17, 1913. The city excepted to the judgment, but did not pray an appeal in the lower court. However, on October 6, 1915, and within two years from the judgment, the city filed a copy of the judgment in the clerk's office of this court, executed before the clerk a supersedeas bond and summons was issued against the appellees, but it did not file with the record a motion asking that an appeal be granted.

It will be observed that the judgment of Sullivan against the city was for $410 and the judgment of the Globe Cement Company was for $307; so that each of the judgments was over two hundred but neither of them amounted to five hundred dollars, and both of them were judgments for the recovery of money only. In carrying out the provisions of the Act of 1914, now section 950 of the Kentucky Statutes, regulating the jurisdiction of this court and the manner in which appeals may be prosecuted where the amount in controversy on a money judgment is less than five hundred dollars, this court by rule twenty-two of the court has provided that "If a party desires to prosecute an appeal from a judgment

for the recovery of money or personal property, or to enforce a lien thereon, in cases where the value in controversy is as much as two hundred dollars, exclusive of interest and costs, but less than five hundred dollars, he must prepare and file his record in the clerk's office of this court in the time and manner now provided by law, and may supersede the judgment by executing bond before the clerk of this court as in other cases when appeals are prayed in this court. . . . . And there must accompany the record a written motion of the appellant asking the court to grant an appeal.''

It is very clear that under this rule the city of Covington had the right to prosecute an appeal to this court, and the only objection that can be urged to the manner in which the appeal was prosecuted is that there was no written motion of the appellant accompanying the record asking the court to grant an appeal. When an appeal in a case like this is prosecuted to this court within the time allowed by law, the appellant should of course file with the record a written motion asking the court to grant an appeal. The statute and the rule are both very plain and very simple, yet it seems from the many motions that come before us that a good many lawyers are not acquainted with the easily-understood practice pointed out in the statute and the rule, as well as in numerous decisions of this court: L. & N. R. R. Co. v. Greenbrier Dist. Co., 170 Ky. 775; Oman-Bowling Green Stone Co. v. L. & N. R. R. Co., 169 Ky. 832; Tinsley v. Jones, 169 Ky. 279; Van Meter v. Van Meter, 168 Ky. 783; Haynes v. Adsit, 167 Ky. 443; Gough v. Illinois Central Ry Co., 166 Ky. 568; Gering v. Hoke, 164 Ky. 722; Childers v. Ratcliff, 164 Ky. 123. But in order to further simplify, if it can be done, the practice regulating appeals in cases like this, we have determined to hold that when the record is duly filed in the clerk's office of this court, and no appeal was prayed in the court below, the filing of the record will be treated as including a motion that this court grant an appeal, although no motion asking for such an appeal is filed with the record. So that when a record is filed, as in this case, although unaccompanied by a motion to grant an appeal, the clerk will act as if a motion for an appeal accompanied the record and may issue summons, take a supersedeas bond, and issue an order of supersedeas thereon, as was done

in this case. Therefore the motion to dismiss the appeal is overruled.

Coming now to the merits of the case, the lower court on the authority of City of Louisville v. Bitzer, 115 Ky. 359, as appears from a memorandum opinion, refused to give the contractors any lien on the lot, because the lien of each of them exceeded the value of the lot after the improvements were made and hence would amount to the taking of the lot in satisfaction of either the claim of Sullivan or the Globe Cement Company, which would not then be satisfied.

In the Bitzer case, as appears from the opinion, the improvement claims amounted to $1,778, which was largely more than the value of the property sought to be subjected to the lien, and the court said: "The proof here showing conclusively that the cost of the improvement far exceeded the entire value of the property assessed after the improvement was made, the circuit court properly refused to enforce the lien upon the property. . . . . The difficulty with this is that we have nothing to guide us, and that to enter any judgment against the property owners would be simply an arbitrary guess. The proof is that the property received no benefit at all from the improvement. The testimony to this effect by the witnesses is supported by the facts shown in the record. We cannot take away from the citizen his property without proof warranting the judgment. When the assessment is enforced on the ground that the judgment of the legislative authorities is conclusive of the question of benefits, the judgment of the court is based upon the decisions of the legislative body fixing the boundary on which the burden of the special tax shall fall. But when the decision of the legislative authorities is rejected for the reason that a case of spoliation is established, the court has nothing to guide it in determining how far the property of the citizen is taken for public purposes without just compensation, except the proof in the case; and there can be no judgment against the citizen unless the evidence is sufficient to enable the court to reach a conclusion intelligently."

In answer to the contention of counsel for the city that the court should have enforced the apportionment warrants to some extent against the property and have adjudged a lien for at least a part of the warrants, although the whole amount was not enforcible, it was

further said: "It is settled, however, that this statute does not apply to cases in which the city has no power to make the improvement at the cost of the owners of adjacent property, and that where the city has complete authority to contract for the work, but no authority to make a charge on the abutting property, it is liable to the contractor for the price of his work. . . . ."

In Otter v. Barber Asphalt Paving Co., 29 Ky. L. R. 1157, which was another case involving a street improvement claim in the city of Louisville, the Bitzer case was followed, and again in City of Louisville v. Benedict, 147 Ky. 391. But the charter provisions regulating street improvements in the city of Louisville are very different from the charter provisions regulating street improvements in the city of Covington. In the Louisville charter there is no limitation upon the amount that may be charged an abutting owner for improvements. There is no provision that a certain per cent. in value of the lot may be taken for the improvement. There is no provision that the cost of the sewer improvement shall not exceed a certain sum per lineal foot of the lot charged.

But in the Kentucky Statutes, 1909 edition, sections 3096-3104, inclusive, as well as in the amendment to these sections, which is to be found in sections 3096-3104 of the 1915 edition of the statutes, it is provided that no local assessment for street improvement shall exceed one-half of the value of the property assessed after the improvement has been made.

It is further provided in respect to sewer improvement in section 3105 that the general council "may assess the entire cost, including intersections, of constructing the same upon the lots and lands in the neighborhood of said sewers which may be benefited thereby, according to the benefits received, and in every case the council shall, by ordinance, fix and determine what lots and lands are benefited thereby, and fix and determine the amount of tax to be levied upon the several lots or lands so benefited; Provided, That where the cost of a sewer shall not exceed the sum of one dollar per front foot of the property bounding or abutting upon said streets, alleys or highways in, under or along which the sewers may be constructed, then said abounding or abutting property shall be deemed the property benefited thereby, and said cost shall be apportioned equally on the said abutting lot owners according to the feet abutting."

It will thus be seen that under the statute relating to street improvement as distinguished from sewer improvement, the property cannot be confiscated for the cost of the improvement of one street, because in no state of case can the assessment for the improvement of one street exceed one-half of the value of the property assessed after the improvement has been made. Nor under section 3105 with facts such as appear in this case can the assessment for a sewer improvement on one street exceed the sum of one dollar per front foot of the property abutting on the street under or along which the sewer has been constructed.

We also construe the words "street improvement" in section 3096 to include the improvement of streets, alleys, public ways and sidewalks, including the guttering and curbing incident thereto.

And so, although a separate contract, as in this case, may be let for the street improvement, including guttering and curbing, and a separate contract let for the sidewalk improvement, when it is attempted to enforce the liens for the payment of these improvements, they are to be treated as one improvement and not exceeding one-half the value of the lot can be taken for both. In other words, the city cannot assess against the property one-half of its value for the improvement of one street and then make an additional assessment for the cost of the sidewalk on this street, because if this were permitted to be done, the assessment on one street for both sidewalk and street improvement might amount to as much as the whole value of the property. If, however, the street is improved under one ordinance or contract and the property is assessed one-half of its value for this improvement, and thereafter a sidewalk is constructed under another ordinance or contract, the city may assess the lot for the cost of the sidewalk to the extent of fifty per cent. of its enhanced value, if any, between the time when the assessment for the street improvement was made and the time when the assessment for the sidewalk improvement was made. In this way the property will at all times be subject to assessment to the full extent of one-half of its value for the improvement of each street on which it abuts; City of Covington v. Schlosser, 141 Ky. 838.

In the case we have the assessment for the street improvement was $410 and the assessment for the side-

'walk improvement $172, while the value of the lot after the improvements were made was only $250. It therefore follows that for both of these improvements the lot could only be assessed for one-half of its value, or $125, and $125 should be divided between the assessment for street improvement and the assessment for sidewalk improvement in proportion to the amount assessed for each. For the balance of the cost of these improvements judgment should go against the city.

But the statutory provisions contained in sections 3096-3104, inclusive, under which the street improvements mentioned were made, and which limit the assessment for these improvements, have no application to the assessment for sewer improvement. This improvement is entirely distinct from sidewalk and street improvement and is regulated by section 3105 of the statute relating exclusively to sewers. This was expressly so held in the case of City of Covington v. Schlosser, 141 Ky. 838. See also Johnson v. McKenna, 171 Ky. 389. So that in addition to the assessment for street improvement as heretofore indicated, the lot may be assessed for the whole cost of the sewer improvement, as the cost of this improvement is less than one dollar per lineal foot of the lot.

Wherefore an appeal is granted and the judgment is reversed, with directions to enter a judgment in conformity with this opinion.

Whole court sitting; Chief Justice Miller dissenting from so much of the opinion as treats the street assessment and the sidewalk assessment as one assessment.